**TEXAS OIL & GAS CORPORATION, Plaintiff,**

v.

**Donald HODEL, Defendant (Two Cases).***

**Civ. A. Nos. 79–2976, 80–0488.**

United States District Court, District of Columbia.

Jan. 15, 1987.

---

* Arkla Exploration Company and the State of Arkansas have earlier been granted intervention as defendants of right.

Andrew F. Walch, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for Hodel.

Jim Guy Tucker, Mitchell, Williams, Selig, Jackson & Tucker, Little Rock, Ark., and Alan S. Novins, Lee Ellen Helfrich, Lobel, Novins & Lamont, Washington, D.C., for Arkla Exploration Co.

**1.** The factual history of the Secretary's actions is set forth both in *TXO I* and in the U.S. Court of Appeals for the District of Columbia's opinion, *Texas Oil & Gas Corp. v. Watt,* 683 F.2d 427, 435 (D.C.Cir.1982) (*"TXO II"*). Initially the Secretary approved TXO's lease applications. At issue in *TXO I* was a subsequent, "last minute" decision of the Secretary to cancel 20 of the TXO leases.

Mary B. Stallcup, Deputy Atty. Gen., Little Rock, Ark., for State of Ark.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter comes before the court on plaintiff's motion to enforce judgment. For the reasons set forth below, that motion is denied.

On September 25, 1980, this court upheld a decision of the Secretary of the Interior ("Secretary") to cancel oil and gas leases issued to Texas Oil and Gas Corporation ("TXO") for parcels of land within the Fort Chaffee military reservation in Arkansas. *Texas Oil & Gas Corp. v. Andrus,* 498 F.Supp. 668 (D.D.C.1980) (*"TXO I"*).[1] *TXO I*[2] was not the first case before this court to raise issues involving oil and gas leases at Fort Chaffee. On September 21, 1979, approximately 39 days before the plaintiff filed its complaint in *TXO I,* Arkla Exploration Company ("Arkla") filed a suit challenging as arbitrary and capricious the Secretary's determination that the subject lease property was not within a "known geological structure of a producing oil or gas field" (hereinafter referred to as the "KGS" issue). *Arkla Exploration Co. v. Andrus,* No. 79–2501 (D.D.C. Oct. 10, 1980) (*"Arkla I"*). At the request of TXO counsel, the court agreed to address the procedural administrative law questions raised in *TXO I* before turning to the *Arkla I* KGS matter. Hearing Before the Court, *TXO I,* July 24, 1980, Tr. at 6–7. Fifteen days after the court rendered its judgment against the plaintiff in *TXO I,* the court ordered that *Arkla I* be "dismissed without prejudice, and with all rights preserved to each party ... in consideration of the uncertainty of the timing of appellate re-

**2.** Technically, *TXO I* consisted of two separate, related cases. This Court issued two opinions on the same date that together comprised the *TXO I* decision. *See Texas Oil & Gas Corp. v. Andrus,* 498 F.Supp. 668 and 498 F.Supp. 677 (D.D.C.1980). These cases were later consolidated for purposes of appeal. *See "TXO II," supra.*

view." *Arkla I.* The plaintiff promptly filed an appeal in *TXO I.*

On June 11, 1982, the U.S. Court of Appeals for the District of Columbia reversed this court's decision in *TXO I.* The circuit court held that the Secretary had erred in cancelling the TXO oil leases and directed that the Fort Chaffee leases be reinstated:

> The first consequence that flows from our decision is that the Fort Chaffee leases must be reinstated. We have rejected the Secretary's proffered rationale for cancellation; the leases were valid when issued.... Therefore the validity of the issued leases continues undiminished. In addition, we see no reason why TXO should not receive favorable action on its applications for drilling permits on two of the leased parcels at Fort Chaffee, which have been held in abeyance since September 20, 1979.
>
> ....
>
> As matters stand, TXO must have its twenty Fort Chaffee leases....

*Texas Oil & Gas Corp. v. Watt,* 683 F.2d 427, 435 (D.C.Cir.1982) ("*TXO II*").

Approximately seven weeks later, on August 2, 1982, a certified copy of the judgment in *TXO II* was received by the Clerk of this court "in lieu of mandate." Letter of July 30, 1982, George A. Fisher, Clerk, to James F. Davey, Clerk. Before this court had an opportunity to remand the case to the Secretary[3] (which was done on September 7, 1982), Arkla filed an action in the United States District Court for the Western District of Arkansas challenging the Secretary's decision on the "KGS" issue.[4] The complaint filed in the Western District of Arkansas raised the same issues that had been dismissed without prejudice by this court prior to appeal in *TXO I.*

Shortly after the complaint was filed in Arkansas, the parties (including TXO) agreed not to take any action "to change the status of the case until September 30, 1982." *Arkla Exploration Co. v. Watt,* 548 F.Supp. 466, 469 (W.D.Ark.1982) ("*Ark-*

la II"). This agreement followed a decision by that court to deny a motion by TXO to transfer the case back to the United States District Court for the District of Columbia.

On September 20, 1982, the district court denied motions to dismiss, ruling that Arkla had standing to seek district court review and was not barred from suit by the doctrine of collateral estoppel or the applicable statute of limitations. *Arkla II,* 548 F.Supp. 466. Ten days later the district court entered a preliminary injunction restraining the Secretary from reinstating the Fort Chaffee leases to TXO. *See Arkla II,* 562 F.Supp. 1214 (W.D.Ark.1983).

On April 19, 1983, the Arkansas district court granted judgment for Arkla. The Court concluded that the Secretary's decision not to list the Fort Chaffee oil and gas fields as "known geological structures" was based on "arbitrary" procedures. *Arkla II,* 562 F.Supp. at 1226. The Court enjoined the Secretary "from issuing further leases of the Fort Chaffee mineral lands until a proper KGS determination is made by the United States Geological Survey." *Id.* at 1227.

TXO, which had been made a party to the *Arkla II* suit, appealed the April 19, 1983 decision to the United States Court of Appeals for the Eighth Circuit. The circuit court affirmed the district court's *Arkla II* decision on the merits. The court also concluded that the lower court's opinion was not inconsistent with *TXO II:*

> The D.C. Circuit ... ruled only on the timeliness of TXO's lease applications under applicable federal statutes and has ordered only that TXO's leases be reinstated "[a]s matters stand...." 683 F.2d at 435. That Court did not consider the KGS issue. Its ruling presupposes that the leases were issued in accordance with the applicable law and that the leased lands are not within a KGS. For our Court to require the Secretary to offer these lands for lease only after a lawful KGS determination does not con-

---

**3.** The formal mandate was not received from the Court of Appeals until September 7, 1982.

**4.** The Arkla complaint was filed on August 4, 1982.

flict with the decision of the D.C. Circuit, to which this issue never has been presented. Because we hold these leases invalid notwithstanding the timeliness of TXO's application for them, our mandate necessarily supersedes that of the D.C. Circuit. The parties should not have any doubt that the instant decision now controls this matter.

*Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 353 (8th Cir.1984) ("*Arkla III*").

TXO thereafter filed a petition for a writ of certiorari with the Supreme Court, arguing that the 8th Circuit decision created a clear conflict with the District of Columbia Circuit's ruling in *TXO II*. TXO asserted in its petition that the District of Columbia Circuit had directed the Secretary to reinstate the Fort Chaffee leases, while the Eighth Circuit's decision in *Arkla III* had effectively invalidated the leases.

In its opposition to the petition for a writ of certiorari the Secretary argued that to the extent the Eighth Circuit's decision created an "apparent" conflict, the better practice would have been for the District Court for the Western District of Arkansas to transfer *Arkla II* back to the District Court for the District of Columbia. The Eighth Circuit's ruling, however, in the Secretary's view did not create "any *actual* conflict that warrants further review" (emphasis added):

The validity of the Secretary's non-KGS determinations was not at issue in the District of Columbia proceeding, and Arkla and the State of Arkansas were not parties to that action. It is reasonably apparent that the District of Columbia Circuit did not intend its judgment to preclude the Secretary from responding to successful third-party challenges to petitioner's leases on grounds distinct from those considered in the District of Columbia Circuit litigation. In the highly improbable event that the District of Columbia Circuit should subsequently determine that the Secretary must issue the leases to petitioner, notwithstanding third-party litigation, there will be time

enough for this Court to review such an order. At present, however, the conflict between the two courts of appeals portrayed by petitioner is purely semantic.

Brief of the Secretary of Interior in Opposition to the Petition for a Writ of Certiorari at 11 (footnotes omitted).

In addition, the Secretary also pointed out that further review on the merits was not required:

The Secretary's non-KGS determinations had a rational basis and were correct as a legal matter. Indeed, because Congress specifically conferred upon the Secretary authority "to fix and determine the boundary of any structure, or oil or gas field, for the purposes of this chapter" (30 U.S.C. 189), the refusal of the courts below to accord substantial deference to the Secretary's non-KGS determinations was particularly inappropriate.

Nevertheless, the court of appeals' resolution of this issue does not merit further review. As the court of appeals observed (Pet. App. Exh. 6, at 31–32), following issuance of petitioner's leases, the Secretary has, of his own accord, initiated certain new procedures for making KGS determinations. The court of appeals seemingly indicated approval of these procedures. *Ibid.* In view of this apparent endorsement, it is unclear whether the court intended to impose any standards or requirements for making KGS determinations beyond those *currently* being employed by the Secretary. In any event, because a resolution of the KGS issue presented by the petition would necessitate a determination concerning the validity of KGS procedures which have since been superseded, a ruling on that issue here would have relatively little precedential value. Should the court of appeals' reasoning prove in the future to create a substantial impediment to the operation of the federal onshore oil and gas leasing program, this Court can address the matter in a subsequent case when the nature of any administrative difficulties stemming from the present opinion has become clear.

Brief of the Secretary of the Interior in Opposition to the Petition for a Writ of Certiorari at 12–13 (citations omitted). On January 14, 1985, the Supreme Court denied the petition for certiorari. *Texas Oil & Gas Corp. v. Arkla Exploration Co.,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985).

The plaintiff now requests that this Court order enforcement of the *TXO II* mandate. In explaining its intent behind the motion to enforce, TXO candidly proclaims:

> Ultimately defendants must ascertain from the District of Columbia Circuit whether defendants' contentions regarding the meaning and scope of that court's mandate are correct. As will be seen from the arguments set out below, on the merits it is clear that when it issued its original mandate, the District of Columbia Circuit properly believed and intended that its decision would dispose of all issues as to the validity of TXO's leases.... [O]nce the District of Columbia Circuit has affirmed that it meant what it said in issuing its mandate in this case, TXO believes that the stage will at last be properly set for ultimate review by the one court empowered to unravel the multitudinous issues raised by the case, i.e., the United States Supreme Court.

Plaintiff's Reply Memorandum at 3.[5] Reduced to its essentials, the plaintiff's position rests on two major arguments. First, the plaintiff contends that the Court lacks jurisdiction to do anything but grant its motion:

> Once the defendants' arguments have been reduced to these most basic terms it is obvious that they are urging this court to do something which it lacks the jurisdiction to do: to overrule a mandate which has been issued to it by its own circuit court of appeals in favor of a

conflicting mandate issued by a foreign circuit. Thus, whatever the merits of defendants' arguments, those merits may not be dealt with at the district court level. This court does not have the power to arbitrate between conflicting mandates of courts of appeals, nor may it "interpret" mandates to find that they are "superseded" by mandates of other circuits.

*Id.* at 2–3. Second, the plaintiff argues that the KGS issue was before the District of Columbia Court of Appeals in *TXO II,* and that this Circuit's decision covered *all* issues relating to the validity of TXO's leases. The "KGS determination" was a "component" of the finding that the TXO leases "were valid when issued." Plaintiff's Reply Memorandum at 10.[6] Plaintiff concludes that "the validity of TXO's ownership of the leases is the law of the case" and that the subsequent Eighth Circuit *Arkla III* decision is in direct conflict with the *TXO II* decision. Accordingly, the plaintiff suggests that this district court has but one available action: to enforce the *TXO II* mandate, even if conflicts directly with the subsequent Eighth Circuit decision which, in part, interpreted the *TXO II* mandate.

■ A district court must, of course, adhere to a mandate issued by the circuit court. And, while a district court may not "ignore" any part of an appellate order on remand, it must also scrupulously avoid implementing the mandate in a manner that exceeds, or limits, the scope of the appellate decision. If the decision, as in *TXO II,* appears to include qualifying language, such as the words "as matters stand," or if there is a suggestion that the court's ruling was limited to a particular issue, it remains for the district court to implement the mandate as best it can.

Although the Court of Appeals for this Circuit does not expressly state in *TXO II*

---

5. As the plaintiff phrases it, "a necessary implication of the court's holding that 'the leases were valid when issued' was that a proper KGS determination had been made prior to lease issuance." Plaintiff's Reply Memorandum at 11.

6. It is curious why TXO did not seek clarification of this decision from the circuit that authored the decision as it was entitled to do under Federal Rule of Appellate Procedure 40.

that its decision is limited to a review of the single issue decided in *TXO I*, there is also no declaration therein that the KGS question was ruled upon by that court.

It cannot be overlooked, and is significant, that the KGS question was not at issue:

> Although the validity of the United States Geological Survey's determination that the lands on Ft. Chaffee for which plaintiff was granted leases were not within a known geological structure has come under attack both before the agency and before this Court ... that issue is not presented in this litigation.

*TXO I*, 498 F.Supp. at 670 n. 1. While the court of appeals does, on occasion, review matters not developed below, it is appropriate to assume, absent clarification to the contrary, that an issue *expressly excluded* below is not before the appellate court on appeal. Were this otherwise, it would be expected that the appellate court would clearly signal the litigants, counsel, and the district court that it had determined an issue not even briefed before the district court. It is not controverted that TXO, through counsel, agreed before this Court that the *Arkla* suit (and thus the KGS issue) should be put on the "back burner" pending review of the administrative procedure claims raised in *TXO I*. *TXO I*, Tr at 6–7, July 24, 1980.

> On behalf of the defendant, Texas Oil & Gas, we do not feel that this case, at this point, is moot, the *Arkla* case, because we have substantial confidence that the Court will hold that the Secretary acted improperly in cancelling the leases.
>
> Now, should the Court hold that—with our position, that the leases were improperly cancelled on November 1st, then the *Arkla* suit and *the Arkla claims would continue to be, in effect, a lien, a green cloud on our title.*
>
> We agree at the present time this case, we feel, should have a lower priority, in the pecking order; probably from a pure logical standpoint, it would be best to ignore the fact that the *Arkla* case was,

in fact filed first, and for the Court and counsel to direct their attention first of all to what we call the *TXO v. Andrus* case, which is the suit we filed November 1st, trying to set aside the Secretary's order cancelling the leases.

> So it would be our position at this point, at least, with the Court still having retained jurisdiction over the Secretary's action in cancelling the leases, that while the *Arkla* case, perhaps, should be put on the back burner, that it should not be dismissed.

The Eighth Circuit did not view its ruling as being in conflict with that of the District of Columbia Circuit:

> The thrust of appellants' venue challenge is that they may be subjected to two orders—one from the D.C. Circuit and one from this Circuit—that are mutually inconsistent. The D.C. Circuit, however, ruled only on the timeliness of TXO's lease applications under applicable federal statutes and has ordered only that TXO's leases be reinstated "[a]s matters stand...." 683 F.2d at 435. That Court did not consider the KGS issue. Its ruling presupposes that the leases were issued in accordance with the applicable law and that the leased lands are not within a KGS. For our Court to require the Secretary to offer these lands for lease only after a lawful KGS determination does not conflict with the decision of the D.C. Circuit, to which this issue never has been presented. Because we hold these leases invalid notwithstanding the timeliness of TXO's application for them, our mandate necessarily supersedes that of the D.C. Circuit. The parties should not have any doubt that the instant decision now controls this matter.
>
> ....
>
> TXO and the Secretary maintain that the validity of the leases has been conclusively determined through litigation in the D.C. District Court and an appeal to the D.C. Circuit. They argue that the present action therefore is precluded under the doctrine of collateral estoppel.

In this Circuit, use of collateral estoppel is appropriate when:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979). We need go no further than the first requirement set forth above. The pivotal issue in the instant action is the validity of a USGS determination that the subject lease property is not within a KGS. This simply was not an issue in the District of Columbia proceedings. *See* 498 F.Supp. at 670–71 n. 1. Therefore, we find the doctrine of collateral estoppel to be inapposite.

*Arkla III*, 734 F.2d at 353, 356 (footnotes omitted).

■ Accordingly, it is the determination of this court that the District of Columbia Circuit did not consider the KGS issue, that its decision and the Eighth Circuit decision are not in irreconcilable conflict, but that enforcement of the judgment is barred at this time by the Eighth Circuit decision.

From the outset, the Court of Appeals for the District of Columbia Circuit has been, and continues to be, the most appropriate court to clarify what issues are determined by its own decision.

Accordingly, TXO's motion to enforce judgment is denied.

IT IS SO ORDERED.