**Jean O. TURNER, Trustee,**

v.

**Gregory J. AVERY, et al.**

**Civil Action No. 95–1823.**

United States District Court, E.D. Louisiana.

June 13, 1996.

Gregory J. Avery, Metairie, LA, pro se.

Gregory J. Avery, Law Office of Gregory J. Avery, Metairie, LA, for Kathleen R. Avery.

Emile Louis Turner, Jr., Turner, Young, Hebbler & Babin, New Orleans, LA, for Turner.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is an appeal from a final order of the United States Bankruptcy Court, Eastern District of Louisiana, granting partial summary judgment in favor of Jean O. Turner, Trustee for $89,793.17. This sum represents the amount of money received by the appellant as a result of the pre-petition agreement dissolving the partnership of appellant Gregory Avery and Ray Orrill. For the following reasons, the judgment of the Bankruptcy Court is AFFIRMED.

## BACKGROUND

In 1982, the appellant, Gregory Avery[1], and Ray Orrill formed the law partnership of Orrill & Avery. The partnership was a continuing concern until May 1, 1985 when both men agreed to end their business association. The dissolution was amicably handled by the two parties who reached various oral and written agreements prior to and including a final agreement on May 1, 1985. The part of the agreement which is at issue here concerned the assignment of all the pending partnership cases. To that end, Avery and Orrill created a master list of pending cases and assigned each case to a partner who was to handle that case from May 1 forward. After May 1, 1985 both lawyers began practicing law separately while sharing space and splitting overhead expenses equally.

Those cases, which can be classified as partnership cases, assigned to a specific partner went on to generate funds after May 1, 1985. This money was handled pursuant to the partnership dissolution agreement. 10% of the proceeds from the partnership cases were placed in a special account in order to retire the partnership debt which remained after the dissolution. The rest of the fee was split 50/50 between the lawyer handling the case and the former partner regardless of the fact that the former partner did not have a role in the matter after May 1, 1985.

On May 22, 1985, Avery and his wife filed a voluntary bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. After filing, Avery listed his interest in the partnership and estimated its value at zero dollars. This estimation triggered an investigation by the trustee which resulted in the present action before this Court.[2]

The current motion for partial summary judgment was filed by the trustee on August 27, 1993. The trustee sought to have made part of the bankruptcy estate certain funds received by Avery from Orrill per the terms of the partnership dissolution agreement of May 1, 1995. The amounts concerned are as follows: $79,695.00 representing the amount given to Avery by Orrill as Avery's share of the professional fees earned by Orrill on

---

1. Gregory Avery's wife, Kathleen R. Avery, is also an appellant in this appeal but is not directly involved in the issues presented by this appeal.

2. This case has been litigated over the past ten years. On January 29, 1990, the bankruptcy court granted the trustee's motion for summary judgment on the amounts earned by Avery from the contingent fees on those partnership cases assigned to him (the holding was that all of this money was to be made a part of the bankruptcy estate). This decision was affirmed by the district court on July 26, 1990. The Fifth Circuit Court of Appeals reversed the lower courts on this issue and remanded the case to the bankruptcy court for further proceedings. *See Turner v. Avery,* 947 F.2d 772 (5th Cir.1991) (holding that the trustee must prove on a quantum meruit basis the value of the work done by Avery pre-petition to determine what amount of the fees generated by him goes to the bankruptcy estate).

Orrill's partnership cases; $8,577.75 for advanced costs made by Avery on partnership cases prior to May 1, 1985; and $1,520.42 for monies from the liquidation of partnership bank accounts. The bankruptcy court granted the trustee's motion for partial summary judgment on the above amounts and a judgment was signed on April 11, 1995. It is from this judgment the Averys appeal.

### ANALYSIS

■ The appellants assert several grounds for appeal which can be classified as follows: 1) did the bankruptcy court fail to follow the Fifth Circuit's holding in *Turner v. Avery,* 947 F.2d 772 (5th Cir.1991) in violation of the mandate rule; 2) did the bankruptcy court commit clear error or an abuse of discretion when it refused to grant Avery's motion for a new trial on the basis of inadvertence and excusable neglect; and 3) whether the trustee failed to make a showing of quantum meruit and, if so, was such a failure fatal to her motion for partial summary judgment. "Although this Court reviews conclusions of law de novo, the Bankruptcy Court's findings of fact may not be set aside unless found to be clearly erroneous." *In re Dibert, Bancroft & Ross Co., Ltd.,* 192 B.R. 688, 690 (E.D.La.1996); Fed.R.Bankr.P. 8013.

### A. Did the bankruptcy court fail to follow the mandate of the appellate court?

■ The mandate rule is an application of the law of the case doctrine which applies when a higher court has passed on an issue or issues and then remanded the matter for further proceedings in the lower court. "It is well-established that a district court must adhere to the mandate and the law of the case as it is established on appeal." *Taylor v. United States,* 815 F.2d 249, 252 (3rd Cir.1987). The mandate rule acts to " 'preclude a re-examination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand or by the appellate court in a subsequent appeal.' " *Marine Overseas Services v. Crossocean Shipping,* 791 F.2d 1227, 1232 (5th Cir.1986) (quoting, *Chapman v. NASA,* 736 F.2d 238, 241 (5th Cir.1984)). The appellants contend that the appellate court's prior ruling in *Turner v. Avery* [3] mandated that the trustee prove the value of Avery's services on each partnership case prior to May 22, 1985 and that the bankruptcy court's failure to place this burden on the trustee when considering this motion was at odds with the Fifth Circuit's mandate.

■ While this Court is cognizant of a lower court's duties on remand under the mandate rule, it must also carefully avoid implementing the mandate in a fashion which surpasses the breadth of the appellate decision. *Texas Oil & Gas Corp. v. Hodel,* 654 F.Supp. 319, 323 (D.D.C.1987). The mandate rule does not apply to issues which could have been but were not decided by the earlier appellate proceeding. *Taylor v. United States,* 815 F.2d 249, 252 (3rd Cir.1987); *In re Wonder Corp. of America,* 109 B.R. 18, 30 (Bankr.D.Conn.1989).

■ With the above legal principles in mind, the Court turns to the Fifth Circuit previous pronouncement in *Turner v. Avery, supra.* (Turner I) to see if the bankruptcy court's present decision violated the mandate of the earlier ruling. As stated above [4], *Turner I* dealt with the executory nature of contingency fee contracts and what amount of the fees generated by an attorney/debtor pursuant to these contracts were assignable to the bankruptcy estate. The Fifth Circuit clearly stated,

> [t]he *sole* issue presented by this case is the question of entitlement to fees generated by Avery in the completion of contingent fee contracts which predate his filing in bankruptcy where the securing of the representation and some of the work occurred prior to the filing and some of the work, including closure and distribution of proceeds, occurred after the bankruptcy filing. (emphasis added) *Turner,* 947 F.2d at 774.

*Turner I* held that the trustee must show, on a quantum meruit basis, the work done by Avery pre-petition and can only recover that

---

**3.** 947 F.2d 772 (5th Cir.1991).

**4.** See Footnote 2.

amount on behalf of the estate. Unquestionably, *Turner I* involved only partnership cases handled by Avery and the fees those cases generated. The prior appellate decision did not address, expressly or implicitly, those cases handled by Orrill or the fees generated by the work product of someone other than the attorney/debtor.

The only remaining question raised by this appeal with regard to the mandate rule is whether the bankruptcy court violated its mandate by allowing the trustee to adopt and rely on the bankruptcy courts prior findings of fact. The appellants argue that the Fifth Circuit vacated the entire lower court ruling, findings of fact included. This is not the case. The Fifth Circuit in *Turner I* merely vacated the money judgment in that case as a matter of law and did not address the actual facts of the matter. The bankruptcy court was not required to make new findings of fact, or conclusions of law, in this instance where those findings and conclusions are not inconsistent with the prior appellate ruling and are still relevant and uncontradicted. *United States v. Bd. of Education of City of Chicago*, 621 F.Supp. 1296, 1323 (N.D.Ill. 1985), vacated on other grounds, 799 F.2d 281 (7th Cir.1986).

The bankruptcy court did not violate the mandate of the Fifth Circuit's ruling in *Turner v. Avery*. *Turner I* concerned a specific legal issue which was not raised in the present motion for summary judgment. While *Turner I* necessarily lends guidance to the Court on similar legal questions, it does not control or mandate a certain result in this instance.

**B. Did the Bankruptcy Court abuse its discretion or commit clear error in denying the appellants' motion for a new trial on the basis of inadvertence and excusable neglect?**

The appellants contend that the bankruptcy court committed error when it refused to find inadvertence and excusable neglect upon the appellants' motion for a new trial. A motion for a new trial is left to the sound discretion of the trial court. 11 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil 2d* §§ 2803 & § 2857 (1995). In their motion for a new trial, the appellants sought relief from the bankruptcy courts' judgment on the basis that their failure to file any opposition, or present any evidence, to the motion for partial summary judgment should be excused on the grounds of inadvertence and excusable neglect. *See* Fed.R.Civ.P. 59 & 60(b). Thus, the appellants argue that under Fed.R.Civ.P. 60(b)(1), which allows a court to grant a party relief from a final judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect . . . .," the bankruptcy court should have dismissed the judgment signed April 11, 1995 because the bankruptcy court did not have the benefit of Avery's opposition.

A brief review of a portion of the facts surrounding the motion for partial summary judgment is necessary to consider this aspect of the appellants appeal. The present motion for partial summary judgment was filed on August 27, 1993 and eventually set for hearing on November 17, 1993.[5] Before the hearing date and before any opposition to the motion was originally due, the Averys joined their attorney in a motion to withdraw counsel of record and motion to substitute debtors. This motion was granted on October 19, 1993 but, after objections from the trustee were heard, not made final until November 16, 1993. At that time, the motion for partial summary judgment was continued without date upon a motion for continuance filed by Avery. During this period, the trustee pushed for a new hearing date which was scheduled by the bankruptcy court for March 10, 1994.[6] In February of 1994, Mr. Avery asked for another continuance of six months on this motion based upon his poor health. The hearing was again continued until April 25, 1994 but Mr. Avery moved to continue this hearing on April 4, 1994.

---

**5.** The motion was originally set for September 30, 1993 but the bankruptcy court granted the appellants' motion to continue.

**6.** The basis for the continuance had originally been the health of Mr. Avery. Despite Mr. Avery's poor health, he continued to prosecute various civil actions in both state and federal court during this period.

The short summary above of a mere portion of the procedural history of the trustee's motion for partial summary judgment is sufficient to give one the flavor of these proceedings. A hearing was finally held on this motion on March 30, 1995, a full eighteen months after if was originally scheduled. For seventeen of those eighteen months, the appellant, an attorney, represented himself in these proceedings. At the March 30th hearing and in this appeal, Avery request that the Court excuse his failure to file an opposition to this motion as excusable neglect or inadvertence. This argument rings hollow when a brief review of the record reveals numerous artfully drafted briefs by Mr. Avery in support of his positions on various issues in this case.[7] While Mr. Avery's health may have been poor over the last year and a half, he has managed to prosecute this case with vigor for many months. Appellant's assertion that he believed his former counsel had filed an opposition to this motion is without merit considering that said counsel withdrew before the date any opposition was originally due and that Avery was filing continuances on his own behalf as early as November of 1993.

A review of this matter reveals that the bankruptcy court did not abuse its discretion or commit clear error when it refused to grant the appellant's motion for a new trial on the basis of inadvertence and excusable neglect.

## C. Whether the trustee failed to make a showing of quantum meruit and, if so, was such a failure fatal to the motion for partial summary judgment?

In *Turner I*, the appellate court placed the burden on the trustee to prove the value of the legal services provided by Avery on each of Avery's partnership cases prior to May 22, 1985. *Turner*, 947 F.2d at 774. The trustee was ordered to make a quantum me-

ruit division of those fees collected by Avery on those cases because Avery had rendered personal services on those cases post-petition and as such those earnings did not go to the bankruptcy estate. *See* 11 U.S.C. § 541(a)(6). The appellants contend that *Turner I* places the same requirement on the trustee with regard to the fees generated by the partnership cases handled by Orrill. The facts of this case nor the law support this contention.

As stated above, *Turner I* concerned a separate legal issue than is presented here. Therefore, this Court looks de novo at the motion for partial summary judgment. The trustee's motion brings into question the scope of 11 U.S.C. § 541(a)(6)'s earnings exception.[8] The earnings exception operates to provide the petitioner with a fresh start and to prevent involuntary servitude by not forcing the petitioner to work for creditors. *In re Marcel Molina Y Vedia*, 150 B.R. 393, 398–99 (Bankr.S.D.Tex.1992). The petitioner receives a "fresh start" because the money he earns after the petition for bankruptcy is filed as a result of his own personal services is excluded from the bankruptcy estate. All other monies go to the benefit of creditors as property of the bankruptcy estate.

The trustee's motion for partial summary judgment seeks to recover on behalf of the bankruptcy estate monies Avery received as a result of the partnership dissolution agreement of May 1, 1985 and the personal services of Orrill post-petition. The dissolution agreement divided up the partnership cases between the two attorneys. After a case was assigned to a partner that partner performed all the work necessary to conclude that case. After a case was terminated and a fee received, the non-assigned partner received half (minus 10%) of the fee, not for the work he personally performed, because he in fact would have performed none, but per the terms of the dissolution agreement.

---

7. For an example, see Defendants' motion for leave to take an appeal to the U.S. District Court etc. filed May 13, 1994

8. 11 U.S.C. § 541: Property of the estate
    (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
    (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

The bankruptcy court found that the uncontroverted evidence supported a finding that Avery did no work on those cases assigned to Orrill. The trustee placed into evidence the partnership dissolution agreement, the bankruptcy court's prior findings of fact, and prior trial testimony of Orrill to prove that Avery had not performed any personal services on those accounts. Avery provided the bankruptcy court, and this Court, only unsubstantiated assertions and conclusory allegations in opposition to the motion. *See Douglass v. United Services Automobile Association,* 65 F.3d 452, 459 (5th Cir.1995).

Having found that the facts before the bankruptcy court support the appellee's position, the Court now turns to the law surrounding this motion. Avery was an attorney/debtor who entered into a pre-petition agreement with Orrill, another attorney, from which Avery received $79,695.00. Avery now claims that this money should be legally exempted from the bankruptcy estate pursuant to § 541(a)(6) even though he did not perform any personal services to earn that money. This issue was addressed in *In re FitzSimmons,* 725 F.2d 1208 (9th Cir. 1984).

*FitzSimmons* concerned an attorney/debtor who practiced law as a sole proprietorship. As part of his practice, Edward FitzSimmons employed other attorneys and staff members who helped him generate revenue. *Id.* at 1209. FitzSimmons sought relief under Chapter 11 of the Bankruptcy Code by filing a voluntary petition. As a debtor, FitzSimmons argued that the earnings generated by his sole proprietorship post-petition should be excluded from the bankruptcy estate under the earnings exception to 11 U.S.C. § 541(a)(6). The basis for this assertion was that since the business was a law practice operating as a sole proprietorship all earnings were from services performed by the debtor/attorney. The Ninth Circuit rejected his argument and held that "the earnings exception applies only to services performed by an individual debtor...." *Id.* at 1211. The *FitzSimmons* court went on to state,

§ 541(a)(6) excepts from the proceeds of the estate only those earnings generated by services personally performed by the individual debtor. FitzSimmons is thus entitled to monies generated by his law practice only to the extent that they are attributable to personal services that he himself performs. To the extent that the law practice's earnings are attributable not to FitzSimmons' personal services but to the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, the earnings of the law practice accrue to the estate. *Id.*

Another case which is factually similar to the instant matter is *In re Burkholder,* 177 B.R. 260 (Bankr.N.D.Ohio 1995). *Burkholder* involved an attorney/debtor who had entered into a pre-petition fee splitting agreement with another attorney wherein the debtor referred clients to another attorney and then received 45% of the final fee. *Id.* at 261–62. At issue were funds collected by the debtor post-petition as a result of a fee splitting agreement made pre-petition. The *Burkholder* court held that since the debtor had completed the performance of his obligations pre-petition and performed no personal services post-petition with regard to this money, the proceeds from the fee splitting agreement represented property of the bankruptcy estate.[9] *Id.* at 263–64.

In the instant matter, the partnership dissolution agreement between Avery and Orrill was made pre-petition. After May 22, 1985, Avery performed no personal services on the partnership cases assigned to Orrill but received from these cases $79,695.00. This money represents proceeds wholly attributable to Avery's pre-petition agreement and services performed by someone other than Avery and is properly made part of the bankruptcy estate. *See also In re Wu,* 173 B.R. 411, 413–14 (9th Cir. BAP 1994).

■ As for the remaining awards of $8,577.75 for Avery's share of advanced costs on partnership cases prior to May 1, 1985 and $1,520.42 for Avery's share of liquidated

---

9. *In re Burkholder* also discusses *Turner v. Avery,* 947 F.2d 772 (5th Cir.1991) at length and distinguishes *Turner I* on its facts. *Burkholder,* 177 B.R. at 263–64.

partnership accounts, these sums represent the residual partnership funds which were distributed as a result of the dissolution. They did not result from personal services performed by the debtor post-petition. These amounts were also properly awarded.

### CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy judge is AFFIRMED.